**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
**NEW YORK, NEW YORK**

| | | |
|---|---|---|
| LITTLEJOHN & CO., LLC, et al., | ) | 10-cv-00482 (BSJ) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **AMENDED NOTICE OF REMOVAL** |
| | ) | |
| SAFEGUARD PROPERTIES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Defendants, Safeguard Properties, LLC, KJH Holdings Co., Inc., Robert Klein, LLC,

Robert Klein, and Alan Jaffa, respectfully represent to this Court as follows:

1.     Plaintiffs, Littlejohn & Co., LLC and LJ Safeguard Holdings, Inc., commenced an

action against the Defendants on December 23, 2009, in the Supreme Court of the State of New

York, County of New York, entitled *Littlejohn & Co., LLC, et al. v. Safeguard Properties, LLC,*

*et al*, Case No. 603848/09 ("State Case"), by filing a Complaint and a Summons, copies of which

are attached hereto as Exhibit A.  Copies of the Summons and Complaint were delivered to a

receptionist at the offices of Safeguard Properties, LLC in Ohio on January 12, 2010.  The

Summons and Complaint, therefore, were not served on the Defendants at least prior to January

12, 2010.  No further proceedings, pleadings, process or orders have been held, served or issued

in the State Case.

2.     Defendants are the only named Defendants in the State Case, and there are no

other Defendants which must consent to and join in this removal.

3.    This action is removable to this Court pursuant to 28 U.S.C. §§ 1441 because this Court has original jurisdiction over this action under 28 U.S.C. § 1332(a).

## DIVERSITY OF THE PARTIES

4.    For "the purposes of diversity jurisdiction, a limited liability company's ("LLC") citizenship is determined not by the LLC's place of incorporation or principal place of business, but by the citizenship of each member of the LLC."  *Agility Logistics Corp. v. Elegant USA, LLC*, S.D.N.Y. No. 09 CV 4719(DLC), 2009 WL 3094898, at *1 (S.D.N.Y. Sept. 25, 2009) (confirming existence of complete diversity despite LLC's incorporation in the same state as the plaintiff because none of its members are citizens of Delaware).

### [*Plaintiffs*]

5.    **Littlejohn & Co., LLC:** Plaintiffs allege in the Complaint that Plaintiff Littlejohn & Co., LLC is a Delaware limited liability company with its principal place of business in Greenwich, Connecticut.  (Exhibit A, Complaint, ¶ 1.)  Upon information and belief, at the time of the commencement of the State Case and at the time of removal, none of the members of Plaintiff Littlejohn & Co., LLC were or are citizens of the State of Ohio for purposes of diversity jurisdiction. Therefore, Plaintiff Littlejohn & Co., LLC was and is not a citizen of the State of Ohio for purposes of diversity jurisdiction.

6.    **LJ Safeguard Holdings, Inc.:** Plaintiffs allege that Plaintiff LJ Safeguard Holdings, Inc. is a Delaware corporation, but do not identify its principal place of business. (Exhibit A, Complaint, ¶ 2.)  Upon information and belief, at the time of the commencement of the State Case and at the time of removal, Plaintiff LJ Safeguard Holdings, Inc.'s principal place

71250997.1

of business was and is in Connecticut.  Therefore, at the time of the commencement of the State Case and at the time of removal, Plaintiff LJ Safeguard Holdings, Inc. was and is not a citizen of the State of Ohio for purposes of diversity jurisdiction.

[*Defendants*]

7.    **Safeguard Properties, LLC:**  At the time of the commencement of the State Case and at the time of removal, Defendant Safeguard Properties, LLC was and is an Ohio citizen for purposes of diversity jurisdiction.

(a)    At the time of the commencement of the State Case and at the time of removal, Defendant Safeguard Properties, LLC was and is a Delaware limited liability company with its principal place of business in Valley View, Ohio.

(b)    The members of Defendant Safeguard Properties, LLC are Defendants Robert Klein, LLC and KJH Holdings Co., Inc.

(i)    **Robert Klein, LLC:** At the time of the commencement of the State Case and at the time of removal, Robert Klein, LLC was and is a citizen of the State of Ohio for purposes of diversity jurisdiction.  Robert Klein, LLC is a single-member Ohio LLC. Its single member is Defendant KJH Holdings Co., Inc., which was and is an Ohio citizen for purposes of diversity jurisdiction as explained in paragraph 7(b)(ii) below.

(ii)    **KJH Holdings Co., Inc.:**  At the time of the commencement of the State Case and at the time of removal, KJH Holdings Co., Inc. was and is a citizen of the State of Ohio citizen for purposes of diversity jurisdiction.  It was and is an Ohio corporation with its principal place of business in Ohio.

8.     **KJH Holdings Co., Inc.:** As explained in paragraph 7(b)(ii) above, at the time of the commencement of the State Case and at the time of removal, Defendant KJH Holdings Co., Inc. was and is a citizen of the State of Ohio citizen for purposes of diversity jurisdiction.

9.     **Robert Klein, LLC:** As explained in paragraph 7(b)(i) above, at the time of the commencement of the State Case and at the time of removal, Defendant Robert Klein, LLC was and is a citizen of the State of Ohio for purposes of diversity jurisdiction.

10.    **Robert Klein:** At the time of the commencement of the State Case and at the time of removal, Defendant Robert Klein was and is a citizen of the State of Ohio for purposes of diversity jurisdiction.  His permanent domicile and residence is in Ohio at 23453 Timberlane Drive, Beachwood, Ohio 44122.

11.    **Alan Jaffa:** At the time of the commencement of the State Case and at the time of removal, Defendant Alan Jaffa was and is a citizen of the State of Ohio for purposes of diversity jurisdiction.  His permanent domicile and residence is in Ohio at 2499 Brentwood Rd., Beachwood, Ohio 44122.

## <u>THE AMOUNT IN CONTROVERSY IS MET</u>

12.    While the Defendants deny any and all liability to the Plaintiffs, the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiffs seek damages in the amount of $1.7 million in each of their first seven causes of action.  (Exhibit A, Complaint, ¶¶ 86, 91, 98, 108, 119, 130, and 139.)  Plaintiffs also seek damages in "an amount to be determined at trial but presently believed to be no less than $100 million" in their eighth cause of action. (Id., ¶ 149.)

## JURISDICTION

13.     Accordingly, this Court has original diversity jurisdiction over the State Case

pursuant to 28 U.S.C. §§ 1332(a) because complete diversity of citizenship exists between the

parties and because the alleged amount in controversy exceeds $75,000. Thus, this action may

properly be removed to this Court pursuant to 28 U.S.C. § 1441.

## OTHER REMOVAL REQUIREMENTS

14.     Promptly after the filing of this Notice of Removal, Defendants shall provide

notice of the removal to Plaintiffs through their attorneys of record in the State Case and to the

Clerk of the Court in the State Case, as required by 28 U.S.C. § 1446(d).

15.      Defendants reserve all rights, including defenses and objections as to venue,

personal jurisdiction, and service, and the filing of this Notice of Removal is subject to, and

without waiver of, any such defenses and objections.

WHEREFORE, Defendants Safeguard Properties, LLC, KJH Holdings Co., Inc., Robert

Klein, LLC, Robert Klein, and Alan Jaffa hereby remove this action from the Supreme Court of

the State of New York, County of New York.


Dated: January 22, 2010                    Respectfully Submitted,

_____
George B. Yankwitt  (GY-1203)
Squire Sanders & Dempsey LLP
30 Rockefeller Plaza
New York, New York  10112
(212)872.9898
gyankwitt@ssd.com

71250997.1

<u>Of Counsel:</u>

Stephen M. O'Bryan
Mark R. Jacobs
Majeed G. Makhlouf
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114
(216) 241-2838
(216) 241-3707 (fax)
*sobryan@taftlaw.com*
*mjacobs@taftlaw.com*
*mmakhlouf@taftlaw.com*

*Attorneys for Defendants Safeguard Properties, LLC,
KJH Holdings Co., Inc., Robert Klein, LLC, Robert
Klein, and Alan Jaffa*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------x
LITTLEJOHN & CO., LLC and
LJ SAFEGUARD HOLDINGS, INC.

         Plaintiffs,

   -against-

SAFEGUARD PROPERTIES, LLC,
KJH HOLDINGS CO., INC., ROBERT KLEIN, LLC,
ROBERT KLEIN, AND ALAN JAFFA,

        Defendants.
--------------------------------------------------------------------------x

Index No.: **603848/09**

Plaintiffs designate
New York County as
the place for trial

**SUMMONS**

TO: Safeguard Properties, LLC
   7887 Safeguard Circle (Hub Parkway)
   Valley View, OH 44125

   KJH Holdings Co., Inc.
   7887 Safeguard Circle (Hub Parkway)
   Valley View, OH 44125

   Robert Klein, LLC
   7887 Safeguard Circle (Hub Parkway)
   Valley View, OH 44125

   Robert Klein
   Safeguard Properties, LLC
   7887 Safeguard Circle (Hub Parkway)
   Valley View, OH 44125

   Alan Jaffa
   Safeguard Properties, LLC
   7887 Safeguard Circle (Hub Parkway)
   Valley View, OH 44125



NEW YORK
COUNTY CLERK'S OFFICE

DEC 23 2009

NOT COMPARED
WITH COPY FILED

TO THE ABOVE-NAMED DEFENDANTS:

  **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve

a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the plaintiff's attorneys within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein. The basis of the venue designated is that Plaintiffs reside in New York County.

Dated: New York, New York
      December 23, 2009

                    MORRISON COHEN LLP

                    By:_____

                      Jerome Tarnoff
                      Fred H. Perkins
                      Alvin C. Lin

                      909 Third Avenue
                      New York, New York 10022
                      (212) 735-8600
                      Attorneys for Plaintiffs

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x
LITTLEJOHN & CO., LLC and
LJ SAFEGUARD HOLDINGS, INC.

                                  Plaintiffs,                      Index No.: **603848/09**

        -against-

                                              **COMPLAINT**

SAFEGUARD PROPERTIES, LLC,
KJH HOLDINGS CO., INC., ROBERT KLEIN, LLC,
ROBERT KLEIN and ALAN JAFFA,

                                 Defendants.
-------------------------------------------------------------------------x

        Plaintiffs, Littlejohn & Co., LLC and LJ Safeguard Holdings, Inc., by their attorneys, Morrison Cohen LLP, as and for their Complaint against defendants Safeguard Properties, LLC, KJH Holdings Co., Inc., Robert Klein, LLC, Robert Klein, and Alan Jaffa, allege as follows:

### PARTIES

        1.      Plaintiff Littlejohn & Co., LLC ("Littlejohn") is a Delaware limited liability company with its principal place of business in Greenwich, Connecticut.

        2.      Plaintiff LJ Safeguard Holdings, Inc. ("LJ Holdings") is a Delaware corporation.

        3.      Defendant Safeguard Properties, LLC ("Safeguard") is a Delaware limited liability company with its principal place of business in Valley View, Ohio. Safeguard is qualified to do business in all fifty (50) states, including New York.

        4.      Defendant KJH Holdings Co., Inc. ("KJH Holdings") is an Ohio corporation with its principal place of business in Valley View, Ohio. KJH Holdings owns 99 percent of Safeguard. It was also the sellers' representative for purposes of the contemplated

sale of Safeguard as described herein.  The Robert Klein 2003 Trust, of which Robert Klein is the sole trustee, owns a majority of the voting stock of KJH Holdings.

5.    Robert Klein, LLC is an Ohio limited liability company with its principal place of business in Valley View, Ohio.  Robert Klein, LLC owns 1 percent of Safeguard.

6.    Defendant Robert Klein ("Klein") is a resident of the State of Ohio.  At all times relevant to the allegations set forth herein, Defendant Klein was the Chief Executive Officer ("CEO"), President, and Manager of Safeguard and had effective legal control over KJH Holdings, Robert Klein, LLC and Safeguard.

7.    Defendant Alan Jaffa ("Jaffa") is a resident of the state of Ohio and, at all times relevant to the allegations set forth herein (except as otherwise noted), was the Chief Operating Officer ("COO") of Safeguard.  Jaffa is Defendant Klein's son-in-law.

## NATURE OF THE ACTION

8.    This action arises from Defendants' unlawful actions in connection with their negotiation of a proposed acquisition of Safeguard by Plaintiffs.  Defendant Safeguard breached its explicit contractual obligation to negotiate in good faith.  Defendants Klein and Jaffa made repeated fraudulent misrepresentations designed to induce Littlejohn to enter into a written letter agreement (the "Letter Agreement") for the purchase by Littlejohn of Safeguard for $260 million and to continue its participation in negotiations.  Ultimately, Safeguard, KJH Holdings and Robert Klein, LLC, even after agreeing to all of the terms of the sale of Safeguard to Littlejohn and to the execution version of an acquisition agreement, refused to execute the acquisition agreement and go forward with the agreed-to transaction.  It was only at this time that the true nature of the Defendants' bad faith and fraud came to light.

9.    In June 2009, Littlejohn and Safeguard entered into the Letter Agreement. The Letter Agreement specified the anticipated sale price of $260 million and created an Exclusivity Period during which Safeguard committed to negotiating the terms of the acquisition in good faith.  The sale price was premised on the completion of due diligence by the end of August, and closing by or before September 30, 2009.

10.    In consideration for Littlejohn's anticipated investment of substantial efforts, time and expense in the due diligence and negotiation process, Safeguard agreed in the Letter Agreement (i) to negotiate in "good faith" with Littlejohn with respect to the proposed acquisition and (ii) to facilitate Littlejohn's completion of due diligence by, among other things, providing access to relevant Safeguard information and personnel.  Safeguard also represented and warranted that it did not have any other agreements concerning such acquisition.  The Letter Agreement provided that if Safeguard violated such provisions, it would immediately reimburse Littlejohn for all out-of-pocket expenses incurred by Littlejohn in connection with the proposed acquisition.

11.    Defendants represented numerous times to Littlejohn that they were fully committed to the negotiation process and to ultimately consummating the transaction; however, their representations to Littlejohn were false.  In that regard, upon information and belief, Defendant Klein sought to use the negotiations with Littlejohn to "hedge his bets" on Safeguard. Thus, to the extent that Safeguard's business appeared to be cresting or falling, he could go forward with the transaction and sell Safeguard to Littlejohn for the agreed-to purchase price of $260 million.  However, if Safeguard was performing well and appeared likely to continue to perform well for the foreseeable future, he would not sell Safeguard to Littlejohn.  To preserve this "option" for as long as possible, Safeguard deliberately slowed the due diligence and

negotiation processes while all the time reassuring Littlejohn as to its commitment to completing the transaction.

12.    Safeguard also misrepresented that Defendant Klein was the sole decision-maker who could approve the transaction by himself.  To the contrary, he in fact could not authorize the sale of Safeguard unless he first obtained the approval of his family, notwithstanding that Defendant Klein had effective legal control over Safeguard.  Upon information and belief, Defendants were, at all relevant times, aware that Defendant Klein's family held this de facto veto.  Yet they, including particularly Jaffa, not only withheld this information from Littlejohn, but in fact affirmatively and repeatedly represented that Defendant Klein, and Klein alone, had the authority and ability to negotiate and consummate the sale of Safeguard.  Defendants Klein and Jaffa each made repeated misrepresentations on this issue.

13.    In addition, on information and belief, Defendant Klein also sought to use the negotiations with Littlejohn -- but never disclosed such to Littlejohn -- as a way to obtain leverage in Defendant Klein's own negotiations with his son-in-law, Defendant Jaffa, concerning ownership and control of Safeguard.  While Defendant Klein owns and controls the equity in Safeguard and Jaffa has no equity in Safeguard, Jaffa is the likely heir apparent to Safeguard. On information and belief, Defendant Klein wanted a way to eventually "cash out" his equity in Safeguard and if he did not sell to Littlejohn because, among other reasons, of his family's likely exercise of its undisclosed de facto veto or because of Klein's "option," then Defendant Klein would use Littlejohn's negotiation of a definitive acquisition agreement as a "stalking horse" to improve his leverage in his ultimate negotiations with Jaffa.

14.    Had Littlejohn known the truth, it would never have incurred the expenses necessary to conduct due diligence and negotiate an acquisition agreement.  If Defendants had

not repeatedly assured Littlejohn that they were committed to selling Safeguard to Littlejohn, Littlejohn would not have stayed at the negotiation table a ready, willing, and able $260 million buyer for as long as it did.

15.    On October 28, 2009, the parties completed their negotiations and reached agreement on all terms of the transaction and on execution versions of all the transaction documents.  The parties convened in Ohio at Safeguard's offices to make a presentation to Littlejohn's bankers and to sign the acquisition agreement.  It was only after such presentation that Defendant Klein recanted his previously communicated agreement and, for the first time, disclosed that he needed to obtain the consent of his wife, children and family in order to sign the acquisition agreement on behalf of Safeguard, KJH Holdings and Robert Klein, LLC.  Shortly before midnight on October 28, 2009, Defendant Klein advised Littlejohn that he was not able to obtain his family's consent and that Safeguard, KJH Holdings and Robert Klein, LLC would not be signing the acquisition agreement.

16.    Defendants' wrongful actions constitute multiple breaches of the Letter Agreement, a breach of the implied covenant of good faith and fair dealing, a breach of the agreed-upon but unsigned acquisition agreement and fraud.

17.    Littlejohn incurred approximately $1.7 million in costs and expenses in connection with the proposed transaction.  As the result of Defendant Klein's refusal to execute the acquisition agreement and perform under its terms, Defendants deprived Plaintiffs of the benefit of their bargain, including anticipated profits in excess of $100 million.

## JURISDICTION AND VENUE

18.    This Court maintains personal jurisdiction over Defendants Safeguard, KJH Holdings, Klein and Jaffa in that each transacted business within the State of New York,

and in the regular course of business committed tortious acts causing injury to Plaintiffs within the State of New York. In addition, each defendant derives substantial revenues from services rendered in New York and expected or should have expected that their acts as alleged herein would have consequences in New York.

19.    Defendant Safeguard regularly conducts business in the State of New York. Safeguard is registered with the New York Department of State to do business in New York. In that regard, Safeguard has, upon information and belief, worked in the regular course of business with clients on projects based in New York State.

20.    Upon information and belief, Defendant Klein, as a beneficial owner and officer of Safeguard, has, in connection with Safeguard's business, worked in the regular course of business with clients on projects in New York State.

21.    Upon information and belief, Defendant Jaffa, as an officer of Safeguard, has, in connection with Safeguard's business, worked in the regular course of business with clients on projects in New York State.

22.    The parties contemplated and agreed that disputes among the parties would be adjudicated in New York and interpreted according to New York law. In that regard, Section 10(i) of the execution version of the acquisition agreement provides that:

> [E]ach of the Parties hereto hereby irrevocably and unconditionally submits in any suit, action or proceeding arising out of or related to this Agreement or any of the transactions contemplated hereby to the jurisdiction of the courts of the State of New York, the courts of the United States of America for the Southern District of New York … and any appellate courts from any thereof and irrevocably waives any immunity from the jurisdiction of such courts and any claim of improper venue, *forum non conveniens* or any similar objection which it might otherwise be entitled to raise in any such suit, action or proceeding.

23.    Between June and October 2009, Safeguard had repeated, multiple contacts with New York State through its officers, attorneys and other agents in connection with its negotiation of the proposed acquisition agreement.

24.    Safeguard's officers and agents conducted the negotiations by telephone, e-mail and in-person meetings. These officers and agents included, among others, Defendants Klein and Jaffa, Safeguard's agent David Inglis, Safeguard's attorneys, Taft Stettinius & Hollister LLP ("Taft"), and Safeguard's financial advisors, Perella Weinberg Partners LP ("Perella Weinberg").

25.    In connection with the negotiation of the acquisition agreement, the parties conducted an in-person meeting on or about September 17, 2009 at the offices of Perella Weinberg in New York City. Multiple agents of Defendants were present at the meeting, including David Inglis, an attorney from Taft and members of Perella Weinberg.

26.    Defendants Klein and Jaffa conducted multiple telephone calls to the New York residences of Michael Klein (no relation), President of Littlejohn, and David Simon, Managing Director of Littlejohn. Both Michael Klein and Simon are also members of Littlejohn. In particular, Michael Klein and David Simon had multiple telephone calls from their respective residences in New York with Defendant Klein, including (i) telephone calls between Michael Klein and Defendant Klein on October 9 and 12, 2009 and (ii) a telephone call between Defendant Klein, David Inglis, Michael Klein and David Simon on or about October 25, 2009.

27.    Safeguard's attorneys and other agents also regularly corresponded directly with Littlejohn's attorneys, Morrison Cohen LLP, who are located in New York. Such communications were conducted by telephone and e-mail throughout the relevant time period giving rise to the claims alleged herein.

#1998510 v8 \012657 \0020

7

28.      Between June and October 2009, KJH Holdings and Robert Klein, LLC also had multiple contacts with New York State through their officers, attorneys and other agents in connection with the negotiation of the proposed acquisition agreement.  In particular, Jaffa was, at all relevant times, a director of KJH Holdings and officer and manager of Robert Klein, LLC.

29.      Venue is proper within this judicial county pursuant to CPLR § 503.

## FACTS

30.      Defendant Safeguard is the largest privately held field services company in the country.  It was founded in 1990 by Defendant Klein and provides a wide range of superintendence, preservation, and maintenance services, including, among other services: property preservation and maintenance for vacant, abandoned and foreclosed upon properties, property inspections, valuations, and hazard claims administration. Safeguard's clients range from local loan servicing companies to national publicly held mortgage servicing corporations.

31.      Safeguard is controlled by its founder, Defendant Robert Klein. Defendant Klein owns a majority interest in the Robert Klein 2003 Trust, which in turn owns a majority of the voting stock of KJH Holdings.  KJH Holdings owns 99 percent of Safeguard. Defendant Klein also owns additional shares of KJH Holdings individually, and Robert Klein, LLC owns the remaining 1 percent of Safeguard.  As a result of this ownership, at all relevant times, Klein had effective voting control of Safeguard.  He is also Safeguard's President, CEO, and Manager.

32.      Littlejohn is an investment firm with its principal place of business in Greenwich, Connecticut.   Littlejohn is a control-oriented investor in mid-sized companies,

typically those with revenues in the range of $150 million to $800 million, which are experiencing a fundamental change in capital structure, strategy, operations or growth.

**Safeguard And Littlejohn Enter Into The Letter Agreement**

33.    On June 15, 2009, Littlejohn and Safeguard executed the Letter Agreement for the purchase by Littlejohn of Safeguard for a purchase price of $260 million. Defendant Klein signed the Letter Agreement on behalf of Safeguard.  A copy of the Letter Agreement is attached hereto as Exhibit A.

34.    Section 6 of the Letter Agreement created an exclusivity period ("Exclusivity Period") and placed several specific obligations on Safeguard, as follows:

> 6.  In consideration of the substantial time and expense that Littlejohn will incur in connection with conducting due diligence and negotiating and documenting the Proposed Transaction, Safeguard agrees that, for the period of time commencing on the date of delivery of a countersigned letter and ending 35 business days hence (the "Exclusivity Period"), (i) it *shall negotiate in good faith with Littlejohn with respect to the Proposed Transaction* and *facilitate the completion by Littlejohn and its representatives of appropriate legal, business, financial and other customary due diligence* and (ii) it shall not, and shall not cause or permit any officer, director, employee or other agent or representative of Safeguard … to … solicit, initiate or encourage any inquiries, discussions, proposals or offers from, or participate in any negotiations with, or enter into any letter of intent, memorandum of understanding, agreement in principle, commitment or agreement with, or provide any information … to, any person, entity or group other than Littlejohn relating to any proposal or offer for or inquiry about a sale of equity interests … *Safeguard represents and warrants to Littlejohn that it is not a party to or bound by any agreement with respect to any such transaction other than as contemplated by this letter.*  The Exclusivity Period shall be subject to an automatic extension of ten (10) business days in the event that, within two business days of the expiration of the Exclusivity Period, Littlejohn: (i) is in good faith pursuing the Proposed Transaction (it being understood that Littlejohn shall be deemed to be in good faith pursuing the Proposed Transaction, so long as Littlejohn is exploring solutions concerning issues that arise in the course of negotiations and is working in an effort to proceed with due diligence and arrive at definitive documentation for the Proposed Transaction) and (ii) reconfirms in

writing its interest in pursuing a transaction at a debt- and cash-free enterprise value of $260 million. ***If during the Exclusivity Period, Safeguard violates the provisions of this Section 6, then Safeguard shall immediately reimburse Littlejohn and Proctor for all out-of-pocket expenses incurred on or after the date of this letter in connection with the due diligence investigation of the Company, and with the preparation and the negotiation, of this letter, the definitive acquisition agreement and related documentation for the Proposed Transaction***. (bold and italics added).

35.     The parties extended the Exclusivity Period several times.  On or about July 31, 2009, Littlejohn notified Safeguard that it was exercising the automatic extension of the Exclusivity Period for ten business days.  Littlejohn reaffirmed the purchase price of $260 million.  A copy of the July 31, 2009 extension letter is attached as Exhibit B.

36.     The parties extended the Exclusivity Period again on August 14, 2009.  In its extension letter, Littlejohn again reaffirmed the purchase price of $260 million.  Safeguard's COO, Alan Jaffa, countersigned the extension letter on behalf of Safeguard and confirmed that Safeguard had complied with the provisions of Section 6 of the Letter Agreement through the date of the letter.  A copy of the August 14, 2009 extension letter is attached as Exhibit C.

37.     Also, on or about August 14, 2009, the same day the Exclusivity Period was extended, Littlejohn representatives – Angus Littlejohn, Michael Klein and David Simon – met with Defendant Klein in his Safeguard office in Cleveland.  During that meeting, the Littlejohn representatives explained to Defendant Klein repeatedly the enormous resources, costs and expenses it would be incurring in connection with consummating the transaction and that if he and Safeguard had any reluctance about proceeding with the transaction, Defendant Klein should say so now.  In response, Defendant Klein told the Littlejohn representatives the following:

- When we signed the Letter Agreement back in June 2009 and shook hands, "we had a deal then" and "everything else is just details;"

- "We have a deal;" and

- "We're going to be partners."

38.     The parties extended the Exclusivity Period again on September 3, 2009. In its extension letter, Littlejohn again reaffirmed the purchase price of $260 million. Safeguard's COO, Alan Jaffa, again countersigned the extension letter on behalf Safeguard and confirmed that Safeguard had complied with the provisions of Section 6 of the Letter Agreement through the date of the letter. A copy of the September 3, 2009 extension letter is attached as Exhibit D.

39.     The parties extended the Exclusivity Period again on September 18, 2009, to October 2, 2009. In its extension letter, Littlejohn again reaffirmed the purchase price of $260 million, and Safeguard's CEO, Defendant Klein, countersigned the extension letter on behalf of Safeguard and confirmed that Safeguard had complied with the provisions of Section 6 of the Letter Agreement through the date of the letter. A copy of the September 18, 2009 extension letter is attached as Exhibit E.

40.     Littlejohn and Safeguard orally extended the Exclusivity Period during the telephone conversation held on or about October 9, 2009, between Defendant Klein and Michael Klein of Littlejohn. During the call, Michael Klein questioned Defendant Klein on whether he wanted to actually sell Safeguard, and Defendant Klein absolutely reconfirmed his purported intent to sell Safeguard to Littlejohn. During their telephone call, Defendant Klein affirmed to Michael Klein that he and Safeguard were committed to completing the acquisition at the agreed upon purchase price of $260 million, stating unequivocally that "[w]e have a deal." Defendant

Klein orally agreed to extend the Exclusivity Period while negotiations were continuing and specifically told Michael Klein that there was no need to memorialize the extension in writing given how close they were to getting the agreed-to documents finalized. Defendant Klein assured Littlejohn that he intended to get the transaction done, and that a written extension was not necessary. Michael Klein reaffirmed the $260 million purchase price for the transaction.

41. In a subsequent telephone conversation between Defendant Klein and Michael Klein held on or about October 12, 2009, Defendant Klein told Michael Klein that he would "do everything necessary to get this deal done and through to the finish line."

42. Likewise, during a call on or about October 25, 2009, between Defendant Klein, David Inglis, Michael Klein and David Simon, Defendant Klein again reconfirmed his intention to sell Safeguard despite issues that had arose concerning Defendant Jaffa. During the call, Defendant Klein specifically said: "We are moving forward" and asked Littlejohn to confirm its intention to do so even if Jaffa was no longer with Safeguard. Michael Klein and David Simon reconfirmed Littlejohn's intention to buy Safeguard at the previously agreed-to price.

43. Relying on Defendant Klein's assurances during the October 9, 12 and 25, 2009 telephone conversations that the Exclusivity Period was extended, that Safeguard confirmed the agreed-to deal and its intention to move forward, and that Defendant Klein and Safeguard intended to continue negotiating in good faith, Littlejohn continued to conduct its due diligence of Safeguard, to negotiate the terms of the acquisition agreement and to incur expenses in connection therewith.

**<u>Defendants Breach The Letter Agreement To Hedge The Value Of Safeguard</u>**

44.     At all times, Defendants communicated, through words and actions, their declared intention to negotiate and consummate the sale of Safeguard at the $260 million sale price specified in the Letter Agreement and as contemplated in the parties' ongoing discussions. However, unbeknownst to Littlejohn, Defendants were not negotiating in good faith, but were instead using the prospect of a final acquisition agreement to hedge the value of Safeguard.

45.     The parties all understood that Safeguard's business and profits had increased exponentially as a result of the mortgage crisis, which had increased foreclosures and Safeguard's revenues, but also that Safeguard's business would eventually decline as the economy recovered and the number of foreclosures decreased.  Defendant Klein prolonged the negotiations with Littlejohn so as to create an unagreed-to and undisclosed "option" to sell Safeguard for $260 million if the business appeared to be cresting or falling.  However, Defendants did not intend to sell Safeguard if it was performing well and appeared likely to continue performing well.  Defendants intentionally misrepresented and concealed that their willingness to consummate a sale was contingent upon Safeguard's performance and that their true intention was not to proceed with the transaction if Safeguard's business continued strongly. At all times, Defendant Klein knew that if he disclosed the foregoing conditional nature of Safeguard's willingness to sell or not sell, Littlejohn would never have incurred the expenses necessary to conduct due diligence and negotiate an acquisition agreement.

46.     In order to maintain and extend their secret "option" of selling Safeguard, Defendants deliberately slowed due diligence and prolonged negotiations and otherwise sought to delay the date on which the acquisition agreement would be finalized.  As part of their scheme, Defendants limited the role and availability of their attorneys and slowed their responsiveness.  Safeguard thus minimized its legal expenses by having Littlejohn's attorneys do

the bulk of the drafting of the transactional documents.  These actions constituted a breach of Defendants' obligations to negotiate in good faith and to facilitate the completion by Littlejohn of its due diligence.

47.    Moreover, Defendant Klein and Safeguard acted in bad faith in their negotiations with Littlejohn by using Littlejohn as a "stalking horse" to improve Defendant Klein's ultimate negotiations with Jaffa over ownership and control of Safeguard.

48.    Furthermore, in order to disguise their true intentions and bad faith and to induce Littlejohn to continue negotiating and incurring expenses, Defendants continued to falsely represent and reassure Littlejohn of their commitment to sell Safeguard.  Several times, during negotiating sessions in which Littlejohn raised questions as to whether Defendants really wanted to sell Safeguard -- including during an October 9, 2009 call that Defendant Klein had with Michael Klein of Littlejohn -- Defendant Klein told Littlejohn directly that, "I'm committed to this" and that he intended to sell.  During his October 12, 2009 call with Michael Klein of Littlejohn, Defendant Klein stated, point blank, that "we're doing the deal with you" and that he would endeavor to "do everything necessary to get this deal done and through to the finish line." During the October 25, 2009 call, Defendant Klein told Michael Klein and David Simon that: "We are moving forward" with the transaction.

49.    Defendant Klein also sought to assuage Littlejohn's growing concern about the continuing delays in the due diligence and negotiations.  In the October 12, 2009 telephone conversation, Littlejohn told Defendant Klein that if the closing of the transaction was delayed past November 30, 2009, Littlejohn would then have to request a reduction in purchase price, because the Plaintiffs were buying cash flows that would likely be declining.  In response, Defendant Klein said that if this occurred, he would be willing to have that conversation.  These

strong assurances by Defendant Klein led Littlejohn to believe the sale would be completed and, therefore, induced Littlejohn to continue its exclusive negotiations at substantial cost and expense and to accept the delays which had occurred.

50. Defendants did not negotiate in good faith and misrepresented their intentions as to the sale of Safeguard. Littlejohn justifiably relied on Defendants' misrepresentations to its detriment.

## Defendants Misrepresent That Defendant Klein Is The Sole Decision-maker

51. In addition to misrepresenting their intentions regarding the sale of Safeguard, Defendants also intentionally misrepresented that Defendant Klein was the sole decision-maker with respect to whether or not to sell Safeguard. Defendants repeatedly represented and assured Littlejohn that Defendant Klein, who founded and controlled Safeguard and was the beneficial owner of a majority of the ownership interests in Safeguard, had the authority, on his own, to negotiate the acquisition agreement and to approve the sale of Safeguard. Defendants and their representatives, including Jaffa, Safeguard's other officers and its attorneys, never disclosed that, in fact, Defendant Klein would not sign the acquisition agreement unless he first obtained the consent of his family, and that Defendant Klein had, in effect, an agreement with his family pursuant to which the family held a "veto" over any transaction to sell Safeguard.

52. Defendant Klein himself stated unequivocally to Littlejohn representatives conducting the negotiations that he was the decision-maker, that he possessed the requisite authority to decide whether or not to sell Safeguard, and that he was the only one who would be making the decision. At no time did Defendant Klein state, or even intimate, that he required the consent of any other person or entity to consummate the sale of Safeguard. Defendant Klein

never disclosed to Littlejohn the truth: that he needed the *de facto* approval of his family, that he was trying to obtain his family's approval, and that his family was or might be against the sale of Safeguard. Indeed, Defendant Klein sought to ensure that nobody had, through closing conditions, the ability to hold up the transaction.

53. Upon information and belief, Defendant Klein at all times knew that he had to obtain his family's consent for the transaction and deliberately concealed this information from Littlejohn, intending to mislead Littlejohn into believing that he was the sole decision-maker. Defendant Klein knew that if he disclosed to Littlejohn that he needed his family's consent to the transaction, Littlejohn would stop negotiating until such consent was obtained. Accordingly, he represented to Littlejohn in Section 6 of the Letter Agreement that Safeguard is not a party to or bound by any agreement with respect to any transaction for the sale of Safeguard. Notwithstanding and contrary to his representation, in the days immediately preceding October 28, 2009, when representatives of Littlejohn traveled to Safeguard's offices for the signing of the acquisition agreement, Defendant Klein consulted with members of his family pursuant to his separate agreement with them.

54. Defendant Jaffa also repeatedly represented to Littlejohn that Defendant Klein was the only individual whose approval would be necessary to consummate the sale of Safeguard. Jaffa stated, on numerous occasions to Littlejohn representatives during the negotiations, that the decision to sell Safeguard and the terms of such sale were Defendant Klein's decision alone, and that "What Robert wants to do, he will do." Jaffa never expressed that he or anyone else in the Defendant Klein's family had any say or veto over Defendant Klein's decision to sell Safeguard.

55.     Jaffa knew at all times that his representations were false.  Even after Jaffa openly opposed the transaction and resigned from Safeguard, Jaffa still did not reveal that his actions would derail the transaction.  After Defendant Klein's family exercised its veto, Jaffa admitted to Simon what Jaffa and Defendant Klein had concealed from Littlejohn -- that "it was always the intention of the family that the business would remain a family business," that he "never believed Robert would actually sell it," and, as a result of the family's *de facto* veto right, no transaction would proceed.

56.     Defendants' attorneys, Taft, and its agent, David Inglis, communicated and acted consistently with Defendants' misrepresentation that, at all times, Defendant Klein was the sole decision-maker.  These attorneys and agents never disclosed at any time to Littlejohn that the family held a *de facto* veto over the sale of Safeguard.

**The Parties Engage In Due Diligence And Negotiate The Terms Of A Contract**

57.     After the execution of the Letter Agreement in June 2009, Littlejohn and its attorneys and accountants engaged in intensive efforts to conduct a full diligence review of Safeguard and its business and to negotiate an acquisition agreement with Safeguard and its representatives.

58.     Starting from the time that the parties signed the Letter Agreement, Defendants Klein and Jaffa continually reaffirmed that they were genuinely interested in selling Safeguard to Littlejohn.  At no time did they communicate to Littlejohn that Defendant Klein had any second thoughts, that the decision was contingent upon the performance or prospects of Safeguard, or that Defendant Klein's approval of the sale would be subject to a *de facto* veto by family members who opposed the transaction.

59.     Notwithstanding Defendants' continued assurances that they were acting in good faith, in fact Defendants did what they could to intentionally slow the due diligence process, prolong negotiations and stall the execution of the acquisition agreement.  Defendants delayed producing information requested by Littlejohn and waited for two months before providing Littlejohn with access to senior management at Safeguard.  Defendants also refused to permit Littlejohn to conduct due diligence customer service calls, which are ordinarily conducted prior to signing an acquisition agreement, until after the execution of the acquisition agreement.  Littlejohn ultimately relented and deferred these calls, making their being satisfactory a closing condition.  Although the requested due diligence information was eventually provided, the delays were not only consistent with Safeguard's fraudulently concealed hedge concerning the transaction, but constituted a failure by Safeguard to facilitate the completion by Littlejohn of the due diligence process and, therefore, a breach by Safeguard of Section 6 of the Letter Agreement.

60.     Littlejohn also encountered delays when negotiating the transaction documents as Safeguard's attorneys were slow to review and respond to revised drafts produced by Littlejohn's attorneys and were slow to prepare schedules and respond to due diligence requests.  Further, except for one instance, Safeguard's attorneys left it to Littlejohn's attorneys to produce revised drafts of the acquisition agreement.  As a result, Littlejohn incurred the bulk of the legal expenses associated with the drafting and negotiation of the transaction documents.

61.     The purchase price of $260 million set forth in the Letter Agreement was based on a projected closing date of September 30, 2009.  A timely closing was important to Littlejohn because Littlejohn wished to own Safeguard for as long as possible before Safeguard's revenues and profits would decrease as the economy improved and the number of foreclosures

decreased.  Conversely, it was in Safeguard's interest to delay the execution of the acquisition agreement for as long as possible and it did so in violation of Section 6 of the Letter Agreement.

**Defendants Agree To The Terms Of The Acquisition Agreement With LJ Holdings**

62.    Notwithstanding Defendants' delaying tactics, Littlejohn patiently continued to negotiate the contract and KJH Holdings and LJ Holdings ultimately expressed their agreement on the execution version to the acquisition agreement on October 28, 2009 and to all of the terms and conditions of the transaction.

63.    The acquisition documents memorialized the sale of Safeguard for $260 million.  The sale price of $260 million was memorialized in the Letter Agreement and was reiterated and reaffirmed on five separate occasions, including in writing on July 31, 2009, August 14, 2009, September 3, 2009, September 18, 2009, orally on October 12, 2009, and in all of the agreed-to but unsigned documents evidencing the transaction.

64.    It was only after Defendant Klein's family exercised its veto over the sale of Safeguard that Jaffa told Littlejohn the Defendants' undisclosed view that, in fact, the agreed-to $260 million sale price was insufficient.

65.    The October 28, 2009 execution version of the acquisition agreement memorialized all the agreements reached during the parties' negotiations.

66.    Among the terms to which the parties agreed was a $15 million investment by Defendant Klein in the buyer of Safeguard.  Such an investment was specifically contemplated in the Letter Agreement, which stated: "While we [Littlejohn] do not require it, we would welcome a roll-over or similar type of co-investment in the Company from Mr. Klein." Defendant Klein explicitly agreed to the roll-over term early in the negotiations because it was a way for him to hedge his decision if he were to decide to sell Safeguard.

67.     Defendants also agreed to the creation of two escrow funds of $15 million each.  One escrow was a customary escrow to pay indemnification claims and the other was designed to address specific state tax issues that arose during due diligence.  The terms of both escrows were explicitly agreed to by Safeguard during the course of the negotiations.

68.     Defendants' statements and actions leading up to October 28, 2009 continued to mask and conceal any of the issues that would cause Defendant Klein to renounce the sale at the last possible moment.  Defendant Klein continued to verbally reassure Littlejohn that he was committed to completing the negotiations and consummating the sale of Safeguard.

69.     Defendant Klein's statements also continued to conceal any need for family consent.  In the week before October 28, 2009, an issue arose with respect to Safeguard's COO, Alan Jaffa, who is also Defendant Klein's son-in-law.  The parties had contemplated that Jaffa would, after the closing, continue to work for Safeguard pursuant to the terms of an employment agreement that would contain a customary non-competition clause.  Jaffa, however, stated that he would not execute an employment agreement with a non-competition clause.  Initially, Defendant Klein asked Littlejohn to do what it could to make Jaffa happy, but when Littlejohn was unable to obtain Jaffa's agreement to sign the non-competition clause, Defendant Klein told Littlejohn in the October 25, 2009 call with Michael Klein and David Simon that Littlejohn should purchase Safeguard without any assurance of Jaffa's continuing involvement in Safeguard.  Littlejohn agreed to do so and relied upon Defendant Klein's statement as an affirmation of Defendant Klein's intention to sell Safeguard, even if his son-in-law would not be employed by Safeguard post-closing.

70.     Jaffa purportedly resigned as an officer of Safeguard on October 26, 2009, in an effort to hinder the sale.  Jaffa's resignation was in fact a charade and yet another

misleading, bad faith tactic of Defendants during their negotiations with Littlejohn. Indeed, while Defendants represented to Littlejohn that Greg Robinson, Safeguard's CFO and VP of business development, was now effectively Safeguard's No. 2 replacing Jaffa, and had Robinson present himself as such to the financial institutions that were in Cleveland to kick-off the syndication process, upon information and belief, immediately after the exercise by Defendant Klein's family of its veto of the sale of Safeguard, Jaffa rejoined Safeguard in his former capacity.

71.    On or about October 28, 2009, an agreement was reached on all terms for the sale of Safeguard to Littlejohn and on the execution version of the acquisition agreement and other transaction documents. Littlejohn's attorneys forwarded the execution documents to Taft, counsel for Safeguard, KJH Holdings and Robert Klein, LLC, by e-mail on October 28, 2009. Taft's attorneys forwarded to Littlejohn's attorneys an email containing "the final version of the Safeguard Properties, LLC disclosure schedules." After confirming on the telephone to Taft that the documents were final and acceptable to all parties thereto, Littlejohn's counsel forwarded by e-mail, at Taft's request, the final exhibits under cover of the message: "as requested, here is confirmation that the exhibits attached below are those that Taft has previously signed-off on."

**Safeguard, KJH Holdings and Robert Klein, LLC**
**Refuse To Sign The Written Acquisition Agreement**

72.    On October 28, 2009, Defendant Klein and representatives of Littlejohn met in Valley View, Ohio at Safeguard's offices to make a presentation to Littlejohn's bankers and to sign the execution version of the acquisition agreement and related agreements. After such presentation, Defendant Klein told David Simon of Littlejohn for the first time that he needed to meet with his wife, children and family before signing the documents.

#1998510 v8 \012657 \0020

21

73.     Upon information and belief, Defendant Klein in fact held a series of meetings with members of his family during the weekend prior to October 28, 2009 and on the evening of October 28, 2009.

74.     Subsequent to these family meetings, Defendant Klein informed Littlejohn that, notwithstanding the agreement of the parties thereto to the execution version of the acquisition agreement and all of the terms and conditions of the transaction, Defendants would not be executing the acquisition agreement.  Defendant Klein told Littlejohn that "my family won't let me sell the business" and -- despite his own legal ability to act independently of his family's wishes -- Defendant Klein wanted to abide by his family's exercise of its secret and previously undisclosed *de facto* veto.

75.     After Defendant Klein's family vetoed the sale of Safeguard, Jaffa claimed that the purchase price of $260 million -- which had been agreed to in the Letter Agreement and which was subsequently reaffirmed on at least five separate occasions -- was inadequate.  Since the purchase price was agreed to in the Letter Agreement and reaffirmed on numerous occasions by Defendants, including in the execution version of the acquisition agreement agreed to on October 28, 2009, backing out of the transaction for such reason is further evidence of Defendants' bad faith.

### FIRST CAUSE OF ACTION

**(Breach of Letter Agreement (Bad Faith)**
**Against Defendant Safeguard)**

76.     Littlejohn repeats each and every allegation heretofore as if fully set forth herein.

77.     On or about June 15, 2009, Littlejohn and Safeguard executed the binding Letter Agreement for the purchase by Littlejohn of Safeguard.  Section 6 of the Letter Agreement

specifically requires that "Safeguard … ***shall negotiate in good faith with Littlejohn with*** ***respect to the proposed Transaction*** and facilitate the completion by Littlejohn and its representatives of appropriate legal, business, financial and other customary due diligence." (bold and italics added).

78.      Littlejohn acted in good faith at all times in the negotiation of the acquisition agreement and abided by the terms of the Letter Agreement, from the signing of the Letter Agreement on or about June 15, 2009 through October 28, 2009, the date upon which Defendant Klein informed Littlejohn that Safeguard, KJH Holdings and Robert Klein, LLC would not execute the acquisition agreement.

79.      At all times relevant hereto, Defendants and Littlejohn were negotiating with the understanding that they were still in the Exclusivity Period set forth in the Letter Agreement.   In that regard, and as set forth herein, Safeguard and Littlejohn extended the Exclusivity Period five times, the first four times in writing, and the last time orally by Defendant Klein on behalf of Safeguard.  The Exclusivity Period extended through October 28, 2009, the date upon which Defendant Klein advised Littlejohn that Safeguard, KJH Holdings and Robert Klein, LLC would not be signing the acquisition agreement.

80.      Safeguard breached the Letter Agreement by failing to negotiate with Littlejohn in good faith.

81.      Safeguard, through Defendant Klein, acted in bad faith by misrepresenting Defendants' intentions with respect to the sale of Safeguard.  Upon information and belief, Defendants did not intend to sell Safeguard if it was performing well and appeared likely to continue to perform well as of the time the acquisition agreement was to be signed.  Defendants were, in effect, negotiating to preserve an option to sell Safeguard to Littlejohn for $260 million.

Accordingly, Defendants used delaying tactics to extend the date by which they had to decide whether or not to sell Safeguard and attempted to minimize their legal expenses by having Littlejohn's attorneys do the bulk of the drafting.  Defendants never disclosed their actual intentions to Littlejohn, because if they had, Littlejohn would not have incurred the expenses necessary to conduct due diligence and negotiate an acquisition agreement.  In fact, Defendants made multiple representations to the contrary (i.e., that they were committed to completing the sale of Safeguard to Littlejohn) to induce Littlejohn to continue negotiating and incurring expenses.  Littlejohn relied on Defendants' misrepresentations to its detriment.

82.     Safeguard, through its officers and representatives, also acted in bad faith by misrepresenting that Defendant Klein was the sole decision-maker and that he had the authority and ability to sell Safeguard.  Defendants deliberately and knowingly failed to disclose that Defendant Klein needed to obtain the *de facto* approval of his family to enter into an agreement to sell Safeguard.  Furthermore, upon information and belief, Defendants were well aware that Defendant Klein might be unable to obtain the necessary family approval.  Upon information and belief, Safeguard knew of this potential obstacle well before October 28, 2009, but intentionally withheld this information in order to keep Littlejohn at the negotiation table.  In so doing, Safeguard prevented Littlejohn from ceasing negotiations earlier and thereby minimizing costs and fees it was accruing.

83.     Safeguard acted in bad faith by intentionally hindering due diligence by delaying the production of the information necessary for Littlejohn to conduct its due diligence review and by barring access to the company's senior management for months into the due diligence period.  Safeguard even refused to permit Littlejohn to conduct due diligence customer

service calls, which are ordinarily conducted prior to signing an acquisition agreement. Littlejohn ultimately relented and permitted these calls to become a closing condition.

84.    Safeguard acted in bad faith by unnecessarily prolonging the negotiations for the purpose of maximizing the time that KJH Holdings and Robert Klein, LLC would own Safeguard and continue to benefit from its revenues. Such bad faith delays not only threatened to deprive Plaintiff of the full benefits of its bargained for sale price of $260 million, but also increased the overall fees and expenses incurred by Plaintiff during the negotiation period.

85.    Safeguard acted in bad faith by using the negotiations with Littlejohn for an ulterior motive: namely, so that Defendant Klein could use Littlejohn's definitive acquisition agreement as a "stalking horse" to improve Defendant Klein's ultimate negotiations with Jaffa over ownership and control of Safeguard.

86.    As a direct and proximate result of Safeguard's breach of the Letter Agreement, Littlejohn has suffered damages in an amount to be determined at trial but presently believed to be no less than $1.7 million.

## SECOND CAUSE OF ACTION

### (Breach of Letter Agreement (Due Diligence) Against Defendant Safeguard)

87.    Littlejohn repeats each and every allegation heretofore as if fully set forth herein.

88.    On or about June 15, 2009, Littlejohn and Safeguard executed the binding Letter Agreement for the purchase by Littlejohn of Safeguard. Section 6 of the Letter Agreement specifically requires that "Safeguard … ***shall … facilitate the completion by Littlejohn and its representatives of appropriate legal, business, financial and other customary due diligence.***" (bold and italics added).

89.    Safeguard knew that the timing of the transaction was particularly important to Littlejohn, whose sale price was premised on the completion of due diligence and the execution of the purchase agreement by late August and closing by September 30, 2009.  In Section 4 of the Letter Agreement, Littlejohn specifically stated that: "The diligence reviews will be conducted in parallel and we are therefore confident that we can complete our due diligence within 35 business days given full access to the Company and Management during the Exclusivity Period."

90.    Safeguard breached its obligations under Section 6 of the Letter Agreement to facilitate the completion of due diligence.  Safeguard delayed the production of the information necessary for Littlejohn to conduct its due diligence review, including barring access to the company's senior management for months into the due diligence period.  Safeguard even refused to permit Littlejohn to conduct due diligence customer service calls, which are ordinarily conducted prior to signing an acquisition agreement.  Littlejohn ultimately relented and permitted these calls to become a closing condition.

91.    As a direct and proximate result of Safeguard's breach of the Letter Agreement, Littlejohn has suffered damages in an amount to be determined at trial but presently believed to be no less than $1.7 million.

### THIRD CAUSE OF ACTION

**(Breach of Letter Agreement (Existence of Separate Agreement)
Against Defendant Safeguard)**

92.    Littlejohn repeats each and every allegation heretofore as if fully set forth herein.

93.    On or about June 15, 2009, Littlejohn and Safeguard executed the binding Letter Agreement for the purchase by Littlejohn of Safeguard.  In Section 6 of the Letter

Agreement, Safeguard specifically represented and agreed as follows: "***Safeguard represents and warrants to Littlejohn that it is not a party to or bound by any agreement with respect to any such transaction other than as contemplated by this letter.***" (bold and italics added).

94.    Safeguard breached this Section 6 representation and warranty.

95.    Safeguard deliberately and knowingly failed to disclose that Defendant Klein had, in effect, an undisclosed, secret agreement with his family that he would obtain the family's approval prior to entering into an agreement to sell Safeguard.  The existence of this secret agreement was a direct violation of Safeguard's foregoing representation and warranty.

96.    Upon information and belief, Safeguard and Defendant Klein were also well aware that Defendant Klein might be unable to obtain the necessary family approval under the undisclosed, secret agreement.  Safeguard knew of this potential obstacle well before October 28, 2009, but withheld this information.

97.    On October 28, 2009, Defendant Klein informed Littlejohn that Safeguard, KJH Holdings and Robert Klein, LLC would not be signing the acquisition agreement. Defendant Jaffa admitted to Littlejohn that one of the reasons was that the family had vetoed the sale pursuant to Defendant Klein's undisclosed, secret agreement with his family.

98.    As a direct and proximate result of Safeguard's breach of its representation and warranty, Littlejohn has suffered damages in an amount to be determined at trial but presently believed to be no less than $1.7 million.

### FOURTH CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing
Against Defendant Safeguard)**

99.    Littlejohn repeats each and every allegation heretofore as if fully set forth herein.

#1998510 v8 \012657 \0020

27

100.    The Letter Agreement is an enforceable contract which implies a covenant of good faith and fair dealing.

101.    Littlejohn acted in good faith at all times in the negotiation of the acquisition agreement and abided by the terms of the Letter Agreement from the signing of the Letter Agreement on or about June 15, 2009 through October 28, 2009.

102.    Safeguard breached the covenant of good faith and fair dealing implied in the Letter Agreement by failing to negotiate with Littlejohn in good faith, including by making multiple material misrepresentations to Littlejohn.

103.    Safeguard, through Defendant Klein, breached the covenant of good faith and fair dealing, as alleged above, by withholding his true intentions in the negotiations to only sell Safeguard if its performance was declining.

104.    Safeguard, through its officers and representatives, breached the covenant of good faith and fair dealing by misrepresenting that Defendant Klein was the sole decision-maker and that he had the authority and ability to sell Safeguard and deliberately and knowingly failed to disclose that Defendant Klein needed to obtain the approval of his family to enter into an agreement to sell Safeguard.

105.    Safeguard breached the covenant of good faith and fair dealing by intentionally hindering due diligence by delaying the production of the information necessary for Littlejohn to conduct its due diligence review and by barring access to the company's senior management for months into the due diligence period.

106.    Safeguard breached the covenant of good faith and fair dealing by unnecessarily prolonging the negotiations for the purpose of maximizing the time that KJH

Holdings and Robert Klein, LLC would continue to own Safeguard and continue to benefit from its revenues.

107.    In direct reliance upon the Letter Agreement and with justified reliance on Safeguard, Littlejohn spent countless hours conducting due diligence and negotiating the terms of the proposed transaction contemplated in the Letter Agreement.  Safeguard did not at any time express or manifest any intent not to fully negotiate in good faith toward the goal of executing an acquisition agreement containing the terms set forth in the Letter Agreement.

108.    As a direct and proximate result of Safeguard's breach of its covenant of good faith and fair dealing, Littlejohn has been damaged in an amount to be determined at trial but believed to be no less than $1.7 million.

## FIFTH CAUSE OF ACTION

### (Fraud Against Defendant Klein)

109.    Littlejohn repeats each and every allegation heretofore as if fully set forth herein.

110.    Between June 2009 and October 2009, Defendant Klein knowingly made false representations of material fact to Littlejohn which were separate and apart from any pre-existing agreements between Littlejohn and the Defendants.

111.    Defendant Klein fraudulently misrepresented and concealed Defendants' true intentions in the negotiations.  Upon information and belief, Defendant Klein did not intend to sell Safeguard if it was performing well and appeared likely to continue to perform well as of the time the acquisition agreement was to be signed.  Defendant Klein was, in effect, negotiating to preserve an option to sell Safeguard to Littlejohn for $260 million.  Accordingly, he used delaying tactics to extend the date by which he had to decide whether or not to sell Safeguard.

112.    Defendant Klein fraudulently misrepresented and concealed Defendant's true intentions in the negotiations.  Upon information and belief, Defendant Klein did not intend to sell Safeguard to Littlejohn, but rather sought to use Littlejohn's definitive acquisition agreement as a "stalking horse" to improve Defendant Klein's ultimate negotiations with Jaffa over ownership and control of Safeguard.

113.    Defendant Klein deliberately and knowingly withheld from disclosing his true intentions, because if he had disclosed them, Littlejohn would have ceased negotiations.  In fact, he made multiple representations, to the contrary, that he was committed to completing the sale of Safeguard to Littlejohn, in order to induce Littlejohn to continue negotiating and incurring expenses.  Littlejohn relied on Defendant Klein's misrepresentations to its detriment.

114.    Defendant Klein deliberately and knowingly misrepresented to Littlejohn that he intended to complete the transaction.  In that regard, on or about October 12, 2009, Defendant Klein had a telephone conversation with Michael Klein of Littlejohn.  During the telephone call, Defendant Klein not only affirmed to Littlejohn that he and Safeguard were committed to completing the acquisition at the agreed upon purchase price of $260 million, but Defendant Klein also told Michael Klein that he would "do everything necessary to get this deal done and through to the finish line."

115.    Relying on Defendant Klein's multiple assurances, including specifically his misrepresentations during the August 14, 2009 meeting and the October 9, 2009, October 12, 2009 and/or October 25, 2009 telephone conversations that the Exclusivity Period was extended, that the Safeguard and Littlejohn "have a deal," that Defendant Klein and Safeguard intended to complete the sale to Littlejohn, and that Defendant Klein and Safeguard intended to continue

negotiating in good faith, Littlejohn continued to conduct its due diligence of Safeguard, to negotiate the terms of the acquisition agreement and to incur expenses in connection therewith.

116.    Defendant Klein also deliberately and knowingly misrepresented to Littlejohn that Defendant Klein was the sole decision-maker and that he had the authority and ability to sell Safeguard. Defendant Klein deliberately withheld and concealed that he needed to obtain the approval of his family to enter into an agreement to sell Safeguard. Furthermore, upon information and belief, Defendant Klein was well aware that he might be unable to obtain the necessary family approval. Upon information and belief, Defendant Klein knew of this potential obstacle well before October 28, 2009, but withheld this information. In so doing, Defendant Klein fraudulently prevented Littlejohn from ceasing negotiations earlier and thereby minimizing the costs and fees it was incurring.

117.    On or about October 25, 2009, after Defendant Jaffa, Safeguard's COO and Defendant Klein's son-in-law, refused to execute an employment agreement containing a customary non-competition clause, Defendant Klein deliberately and knowingly misrepresented to Littlejohn that he would sell Safeguard without Jaffa's continuing involvement. Upon information and belief, however, Defendant Klein concealed his intention not to approve the sale transaction without approval of his family, of which Jaffa was a significant and influential member.

118.    At each of the times that Defendant Klein made the foregoing material misrepresentations of fact, Defendant Klein intended for Littlejohn to believe and rely upon such misrepresentations and concealments and Littlejohn did in fact reasonably believe such statements to be true. Littlejohn justifiably relied to its detriment on Defendant Klein's misrepresentations and omissions to disclose the truth by entering into and extending the Letter

Agreement, continuing the negotiations and the due diligence process, and continuing to incur the substantial expenses associated with the due diligence process and negotiating the acquisition agreement.  Had Littlejohn known that Defendant Klein's representations were untrue, it would have ceased negotiations and stopped incurring expenses.

119.    As a direct and proximate result of the fraud of Defendant Klein, Littlejohn suffered damages in an amount in excess of $1.7 million.

120.    Good conscience and equity require that Littlejohn be reimbursed its out of pocket expenses associated with the negotiation of the transaction and the due diligence process.

121.    As Defendant Klein's actions were willful, wanton, egregious and in complete and utter disregard of Littlejohn's rights, and as such actions are damaging to the general public and/or constitute a recurring private wrong, Littlejohn is therefore entitled to punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Fraud Against Defendant Jaffa)

122.    Littlejohn repeats each and every allegation heretofore as if fully set forth herein.

123.    Between June 2009 and October 2009, Defendant Jaffa knowingly made false representations of material fact to Littlejohn which were separate and apart from any pre-existing agreements between Littlejohn and the Defendants.

124.    Defendant Jaffa, throughout this period, repeatedly and fraudulently represented to Littlejohn's representatives, that Defendant Klein had the full and sole authority to sell Safeguard, that Defendant Klein did not require the approval or authority from any other

individual and that Defendant Klein was the sole decision-maker. Jaffa repeatedly stated that whether or not to enter into the acquisition agreement was Defendant Klein's decision alone, and that "What Robert wants to do, he will do." Jaffa never expressed that he or any other member of the Defendant Klein's family had any veto over Defendant Klein's decision to sell Safeguard.

125.    Jaffa knew this to be false, and knew that Defendant Klein was required to obtain the consent of his family, which held the power to veto his decision.

126.    Upon information and belief, Jaffa deliberately and knowingly misrepresented Defendant Klein's authority to induce Littlejohn to continue its negotiations and extend the Letter Agreement.

127.    Jaffa also deliberately and knowingly misrepresented to Littlejohn that Defendant Klein would sell Safeguard. Jaffa admitted to Littlejohn after Defendant Klein advised Littlejohn that Safeguard, KJH Holdings and Robert Klein, LLC would not execute the acquisition agreement that "it was always the intention of the family that the business would remain a family business" and that he "never believed Robert [Klein] would actually sell it."

128.    At each of the times Jaffa made the foregoing material misrepresentations of fact, Jaffa intended for Littlejohn to believe and rely upon such misrepresentations and omissions and Littlejohn did in fact reasonably believe such statements to be true. Littlejohn justifiably relied to its detriment on Jaffa's misrepresentations concerning the Defendants' intentions by continuing the negotiations and the due diligence process, and continuing to incur the substantial expenses associated with the due diligence process and with negotiating the acquisition agreement. Had Littlejohn known that Jaffa's representations were untrue, it would have ceased negotiations and stopped incurring expenses.

129.     Jaffa also knew from the outset that he would strongly oppose the sale of Safeguard and use all of his efforts to cause Defendant Klein's family to veto any such sale if he did not sufficiently personally benefit from the sale.  Jaffa received compensation from Safeguard in excess of $16 million in 2008 and expected to receive greater compensation in 2009.  However, if Safeguard were sold, his compensation under Littlejohn's ownership would be drastically reduced.  Further, he would not be entitled to receive any of the proceeds of sale unless Defendant Klein, who had complete discretion over the proceeds from the sale, decided to give him a share.  Jaffa was concerned he might get nothing.  Accordingly, Jaffa had a strong personal motivation to derail the transaction if he did not share in the sale proceeds.  He was ultimately successful.  Despite his repeated representations to Littlejohn that Defendant Klein was the sole decision-maker and that he (Jaffa) had no say in the matter, Jaffa actively opposed the transaction at the eleventh hour and even falsely represented that he resigned from Safeguard.  His actions and his knowledge from the outset that he would seek to cause Defendant Klein's family to veto the sale of Safeguard make his contrary misrepresentations to Littlejohn that much more egregious.

130.     As a direct and proximate result of the fraud of Defendant Jaffa, Littlejohn suffered damages in an amount in excess of $1.7 million.

131.     Good conscience and equity require that Littlejohn be reimbursed its out of pocket expenses associated with the negotiation of the transaction and the due diligence process.

132.     As Defendant Jaffa's actions were willful, wanton, egregious and in complete and utter disregard of Littlejohn's rights, and as such actions are damaging to the

general public and/or constitute a recurring private wrong, Littlejohn is therefore entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Fraud Against Defendants Safeguard, KJH Holdings and Robert Klein, LLC)

133.    Littlejohn repeats each and every allegation heretofore as if fully set forth herein.

134.    Safeguard, KJH Holdings and Robert Klein, LLC, acting through Defendant Klein, fraudulently misrepresented to Littlejohn their true intentions in the negotiations.  Upon information and belief, Defendants did not intend to sell Safeguard if it was performing well and appeared likely to continue to perform well as of the time the acquisition agreement was to be signed.  Defendants were, in effect, negotiating to preserve an option to sell Safeguard to Littlejohn for $260 million.  Defendants never disclosed Defendants' true intentions to Littlejohn, because if they had, Littlejohn would not have incurred the expenses necessary to conduct due diligence and negotiate an acquisition agreement.  In fact, Defendant Klein made multiple representations on behalf of Defendants, to the contrary, that Defendants were committed to completing the sale of Safeguard to Littlejohn, in order to induce Littlejohn to continue negotiating and incurring expenses.

135.    Safeguard, KJH Holdings and Robert Klein, LLC, through their officers and representatives and particularly through Defendants Klein and Jaffa, repeatedly misrepresented to Littlejohn that Defendant Klein was the sole decision-maker and that he had the authority and ability to sell Safeguard.  Defendants deliberately and knowingly failed to disclose that Defendant Klein needed to obtain the approval of his family to enter into an agreement to sell Safeguard.  Furthermore, upon information and belief, Defendants were well

aware that Defendant Klein might be unable to obtain the necessary family approval. Upon information and belief, Defendants knew of this potential obstacle well before October 28, 2009, but withheld this information.

136.    Jaffa also knew from the outset that he would strongly oppose the sale of Safeguard and use all of his efforts to cause Defendant Klein's family to veto any such sale if he did not sufficiently personally benefit from the sale. Jaffa received compensation from Safeguard in excess of $16 million in 2008 and expected to receive greater compensation in 2009. However, if Safeguard were sold, his compensation under Littlejohn's ownership would be drastically reduced. Further, he would not be entitled to receive any of the proceeds of sale unless Defendant Klein, who had complete discretion over the proceeds from the sale, decided to give him a share. Jaffa was concerned he might get nothing. Accordingly, Jaffa had a strong personal motivation to derail the transaction if he did not share in the sale proceeds. He was ultimately successful. Despite his repeated representations to Littlejohn that Defendant Klein was the sole decision-maker and that he (Jaffa) had no say in the matter, Jaffa actively opposed the transaction at the eleventh hour and even falsely represented that he resigned from Safeguard.

137.    Defendants Klein and Jaffa made multiple deliberate and knowingly false statements concerning the above matters to Littlejohn in their capacities as agents and representatives of Safeguard, KJH Holdings and Robert Klein, LLC, with the intention for Littlejohn to believe and rely upon such misrepresentations and omissions.

138.    Littlejohn did in fact reasonably believe and justifiably relied upon the truth of the statements and omissions made by Safeguard, KJH Holdings and Robert Klein, LLC, through their officers and representatives, to enter in the Letter Agreement and to continue participating in the negotiations, to its detriment.

#1998510 v8 \012657 \0020

139.    As a direct and proximate result of the fraud of Defendants Safeguard, KJH Holdings and Robert Klein LLC, Littlejohn suffered damages in an amount in excess of $1.7 million.

140.    Good conscience and equity require that Littlejohn be reimbursed its out of pocket expenses associated with the negotiation of the acquisition agreement.

141.    As Safeguard's actions were willful, wanton, egregious and in complete and utter disregard of Littlejohn's rights, and as such actions are damaging to the general public and/or constitute a recurring private wrong, Littlejohn is therefore entitled to punitive damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Breach of Purchase Agreement
### Against Defendants Safeguard, KJH Holdings and Robert Klein, LLC)

142.    Littlejohn and LJ Holdings repeat each and every allegation heretofore as if fully set forth herein.

143.    On October 28, 2009, Safeguard, KJH Holdings and Robert Klein, LLC, through their counsel and authorized representatives, orally expressed their agreement to and in fact agreed upon execution versions of an acquisition agreement and related agreements pursuant to which KJH Holdings and Robert Klein, LLC would sell Safeguard to LJ Holdings for $260 million.

144.    At the time that Safeguard, KJH Holdings and Robert Klein, LLC agreed to the acquisition agreement and related agreements, the parties thereto were bound by the acquisition agreement's terms.   This constituted a binding, oral agreement that was to be memorialized with the execution of the written documents.

#1998510 v8 \012657 \0020

37

145.    Safeguard, KJH Holdings and Robert Klein, LLC, through their counsel and authorized representatives, manifested their intent and agreement to be bound by the execution versions of the acquisition agreement and related agreements.  The signing of the agreement scheduled for October 28, 2009 was purely ministerial.  Nothing remained to be negotiated.  All that remained to be done was to sign what had already been fully agreed to.

146.    In reliance on such oral agreement, Littlejohn's principals traveled to Ohio to Safeguard's offices on October 28, 2009.  Littlejohn was prepared to fully perform its obligations under the acquisition agreement.  In that regard, Littlejohn brought its bankers to the meeting in Ohio, thus demonstrating its intention to perform, and had already obtained commitments for much of the necessary financing to complete the transaction.

147.    At the meeting with Littlejohn and its bankers, Defendant Klein represented to Littlejohn and its bankers that Defendants would be executing the acquisition agreement and that they were prepared to accept Littlejohn's performance.  However, Defendant Klein then informed Plaintiffs that KJH Holdings and Robert Klein, LLC would not be executing the acquisition agreement and related agreements.

148.    Defendants breached their oral agreement by failing to execute the execution version of the acquisition agreement and failing to perform their obligations under such agreement.

149.    As a direct and proximate result of Defendants' breach of such oral agreement, Littlejohn and LJ Holdings have and continue to be damaged in an amount to be determined at trial but presently believed to be no less than $100 million.

WHEREFORE, Plaintiffs Littlejohn & Co., LLC and LJ Safeguard Holdings, Inc. demand judgment against Defendants Safeguard Properties, LLC, KJH Holdings Co., Inc., Robert Klein, LLC, Robert Klein and Alan Jaffa, as follows:

(a)     On the First Cause of Action for Breach of Letter Agreement (Bad Faith) against Safeguard, an order awarding damages in an amount to be determined at trial, but believed to be no less than $1.7 million.

(b)     On the Second Cause of Action for Breach of Letter Agreement (Due Diligence) against Safeguard, an order awarding damages in an amount to be determined at trial, but believed to be no less than $1.7 million.

(c)     On the Third Cause of Action for Breach of Letter Agreement (Separate Agreement) against Safeguard, an order awarding damages in an amount to be determined at trial, but believed to be no less than $1.7 million.

(d)     On the Fourth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing against Safeguard, an order awarding damages in an amount to be determined at trial, but believed to be no less than $1.7 million.

(e)     On the Fifth Cause of Action for Fraud against Defendant Robert Klein, an order awarding damages in an amount to be determined at trial, but believed to be no less than $1.7 million.

(f)     On the Sixth Cause of Action for Fraud against Alan Jaffa, an order awarding damages in an amount to be determined at trial, but believed to be no less than $1.7 million.

(g)     On the Seventh Cause of Action for Fraud against Safeguard, KJH Holdings and Robert Klein, LLC, an order awarding damages in an amount to be determined at trial, but believed to be no less than $1.7 million.

(h)     On the Eighth Cause of Action by Littlejohn and LJ Holdings for Breach of Contract against Safeguard, KJH Holdings and Robert Klein, LLC, an order awarding damages in an amount to be determined at trial, but believed to be no less than $100 million.

(i)    On the Fifth, Sixth and Seventh Causes of Action against Defendants Robert Klein, Alan Jaffa, Safeguard, KJH Holdings and Robert Klein, LLC, an award of punitive damages in an amount to be determined at trial.

(j)    Costs, disbursements and attorneys' fees in this action; and

(k)    such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          December 23, 2009

MORRISON COHEN LLP

By: _____
    Jerome Tarnoff
    Fred H. Perkins
    Alvin C. Lin
    909 Third Avenue
    New York, New York  10022
    (212) 735-8600

TO:    Safeguard Properties, LLC
       7887 Safeguard Circle (Hub Parkway)
       Valley View, OH 44125

       KJH Holdings Co., Inc.
       7887 Safeguard Circle (Hub Parkway)
       Valley View, OH 44125

       Robert Klein, LLC
       7887 Safeguard Circle (Hub Parkway)
       Valley View, OH 44125

       Robert Klein
       Safeguard Properties, LLC
       7887 Safeguard Circle (Hub Parkway)
       Valley View, OH 44125

       Alan Jaffa
       Safeguard Properties, LLC
       7887 Safeguard Circle (Hub Parkway)
       Valley View, OH 44125

#1998510 v8 \012657 \0020

40

# EXHIBIT A

LITTLEJOHN & CO., LLC
8 SOUND SHORE DRIVE
GREENWICH, CONNECTICUT  06830

TEL: 203-552-3500  FAX: 203-552-3550

June 15, 2009

Mr. Kendrick Ashton
Perella Weinberg Partners LP
767 Fifth Avenue
New York, NY 10153
*Via electronic mail: kashton@pwpartners.com*

**Re:    Proposal for the Acquisition of Safeguard Properties, Inc.**

Dear Mr. Ashton:

Littlejohn & Co., LLC ("Littlejohn") is pleased to reiterate its interest in the acquisition (the "Proposed Transaction") of Safeguard Properties, Inc. ("Safeguard" or the "Company"). We are prepared to move ahead expeditiously on the terms outlined below.

1. **Purchase Price.**  We are prepared to commence discussions regarding the purchase of the Company at a debt- and cash-free enterprise value of $260 million.  The structure we have assumed is a "traditional buyout" structure intended to maximize cash at close to Robert Klein and thus does not contemplate any roll-over, earn-out, warrants or similar instruments. Please note that our offer is contingent on the satisfactory completion of confirmatory diligence, which will initially be focused on determining the sustainability of the Company's cash flows over the next three years as well as validating the normalized level of cash flow that Safeguard is likely capable of generating in the longer term when the housing market eventually returns to a more traditional level.  Our offer is also contingent on other factors as outlined herein.

   As previously stated, we believe that Mr. Klein has been an essential part of the success of the Company and we will therefore expect his cooperation to transition the leadership of the business.  While we do not require it, we would welcome a roll-over or similar type of co-investment in the Company from Mr. Klein.

2. **Financing.**  Littlejohn, in partnership with Proctor NBF Capital Partners ("Proctor"), would finance the Proposed Transaction with a combination of equity and debt securities.  A significant portion of the equity would be provided by an affiliate of Littlejohn Fund III, L.P., which has $850 million of committed funds with substantial capital available for the Proposed Transaction and subsequent growth.  The remainder of the equity would be provided by Proctor and potentially other equity partners.  Since the disruption in the credit markets in the summer of 2007, we have closed five transactions, refinanced three portfolio companies, and just recently announced the sale of one of our portfolio companies to another private equity firm.  Accordingly, we are intimately familiar with the challenges and realities of the current debt markets.  We have shared our diligence to date and received an indication

of interest and a term sheet from Cerberus Capital Management LLC that supports our conviction that the debt financing we require can be secured. While Cerberus can neither underwrite nor commit to the deal at this time, we believe the reality of the markets today is such that few if any potential transactions have committed financing. In fact, every transaction we are currently evaluating is being pursued without committed financing. As such, in parallel with completing our confirmatory diligence, we will work in partnership with management to secure the required debt financing in as creative, timely and ultimately cost effective way as possible for the Company. Our Proposed Transaction assumes that approximately $130 million, less than 1.5x run rate EBITDA, in senior debt financing will be secured at closing and that approximately $45 million in "senior equity" or mezzanine financing will also be placed at closing.

3. **Management.** An integral part of Littlejohn's investment philosophy is to partner with senior level operators and align their interests with ours. Consequently, we believe it is critical for senior management to have proper incentives to ensure that our partnership will be a success. Our offer, therefore, assumes that an equity incentive program will be established so that the senior management team can participate in the continued growth and success of the Company. For your information, we are assuming a 5% management incentive pool. As we understand these managers do not have meaningful equity participation in the business today, we would not require a significant co-investment on their part. However, we would certainly welcome it, if desired.

4. **Remaining Due Diligence and Timing.** The final price, structure and terms of the Acquisition will depend upon the results of a detailed due diligence review. Littlejohn's acquisition team, including its outside due diligence professionals, is prepared to move forward promptly. Below is a list of the areas in which we will need to complete our diligence and the estimated time necessary to complete each review. The diligence reviews will be conducted in parallel and we are therefore confident that we can complete our due diligence within 35 business days given full access to the Company and Management during the Exclusivity Period. We highlight our proposed activities on the next page:

2

| Diligence Area | Estimated Timing |
|---|---|
| **Business Diligence**<br>• REO Inventory<br>• Foreclosure outlook<br>• Regulatory outlook<br>• Customer calls<br>• Contractor calls<br>• Customer analysis including profitability by customer and share of wallet analysis<br>• Competitor analysis<br>• YTD financial performance<br>• Updated 2009 forecast<br>• Updated 5 year forecast by current and contemplated customer and business line<br>• Contemplated senior management structure and composition | 4 – 6 weeks<br>Please note that customer calls will not be conducted without the prior approval of Robert Klein. It is anticipated the customer calls will not be made during the first two weeks of the Exclusivity Period. |
| **Tax and Accounting review**<br>• Quality of earnings report<br>• Tax review<br>• IT systems report | 3 weeks |
| **Industry Review** | 3 weeks |
| **Legal Review** | 3 weeks |
| **HR and Benefits Review** | 2 weeks |
| **Environmental Review** | 1 week |
| **Insurance Review** | 2 weeks |

In addition to completing our diligence, as previously stated, the closing of the Proposed Transaction will be subject to our securing the required debt financing. Given Littlejohn's relationships with a broad group of financing sources, we are confident that we will be able to obtain such arrangements within the timeline discussed above.

5. **Approvals.** We have obtained all internal approvals required to proceed with the Proposed Transaction, subject to the conditions outlined below.

6. **Exclusivity.** In consideration of the substantial time and expense that Littlejohn will incur in connection with conducting due diligence and negotiating and documenting the Proposed Transaction, Safeguard agrees that, for the period of time commencing on the date of delivery of a countersigned letter and ending 35 business days hence (the "Exclusivity Period"), (i) it shall negotiate in good faith with Littlejohn with respect to the Proposed Transaction and facilitate the completion by Littlejohn and its representatives of appropriate

3

legal, business, financial and other customary due diligence and (ii) it shall not, and shall not cause or permit any officer, director, employee or other agent or representative of Safeguard, its subsidiaries or its affiliates to, directly or indirectly, solicit, initiate or encourage any inquiries, discussions, proposals or offers from, or participate in any negotiations with, or enter into any letter of intent, memorandum of understanding, agreement in principle, commitment or agreement with, or provide any information (including without limitation by way of providing access to the Company's management) to, any person, entity or group other than Littlejohn relating to any proposal or offer for or inquiry about a sale of equity interests (other than share repurchases by Robert Klein, KJH Holding Co., Inc. or the Company), or substantially all or any significant portion of the assets of, merger of, or business combination or any similar transaction involving the Company or otherwise conflicting with the Proposed Transaction (each an "Alternative Transaction"), and will not respond to any inquiry made by any person concerning any such Alternative Transaction (including persons with whom Safeguard may have had discussions prior to the date hereof), except to advise such person that a prospective purchaser has been granted an exclusive right to negotiate concerning an acquisition of the Company, without identifying Littlejohn. Safeguard agrees to notify Littlejohn promptly if any third party makes any credible proposal, offer, inquiry or contact with respect to an Alternative Transaction. Safeguard represents and warrants to Littlejohn that it is not a party to or bound by any agreement with respect to any such transaction other than as contemplated by this letter. The Exclusivity Period shall be subject to an automatic extension of ten (10) business days in the event that, within two business days of the expiration of the Exclusivity Period, Littlejohn: (i) is in good faith pursuing the Proposed Transaction (it being understood that Littlejohn shall be deemed to be in good faith pursuing the Proposed Transaction, so long as Littlejohn is exploring solutions concerning issues that arise in the course of negotiations and is working in an effort to proceed with due diligence and arrive at definitive documentation for the Proposed Transaction) and (ii) reconfirms in writing its interest in pursuing a transaction at a debt- and cash-free enterprise value of $260 million. If during the Exclusivity Period, Safeguard violates the provisions of this Section 6, then Safeguard shall immediately reimburse Littlejohn and Proctor for all out-of-pocket expenses incurred on or after the date of this letter in connection with the due diligence investigation of the Company, and with the preparation and the negotiation, of this letter, the definitive acquisition agreement and related documentation for the Proposed Transaction.

7. **Conditions, No Binding Commitment.** This letter is subject to, among other things: (a) the negotiation and execution of a mutually acceptable definitive purchase agreement containing such representations and warranties, covenants, conditions and indemnification, and other terms as are customary or appropriate for a transaction of this type; (b) the receipt of any necessary consents or approvals from third parties; (c) the completion of our due diligence investigation of the Company satisfactory to Littlejohn; and (d) the securing of the required debt and equity financing. This letter constitutes an expression of interest concerning the Proposed Transaction and certain related matters, but does not constitute a binding obligation of any party except as set forth in this Section 7. A binding commitment with respect to the Proposed Transaction will exist only upon the execution of a definitive acquisition agreement, subject to the conditions contained therein. Notwithstanding the foregoing, the provisions of Sections 6 and 8 of this letter shall be binding upon Safeguard.

4

8. **Confidentiality.** Safeguard and its representatives shall not disclose, directly or indirectly, any information concerning the existence of the Proposed Transaction, any of the terms of the Proposed Transaction or related correspondence, or any terms contained in this letter agreement to any other person or entity (including the public or any other prospective party to an Acquisition Proposal), other than its accounting, financial and legal advisors who agree to maintain the confidentiality thereof.

Once again, we very much appreciate the chance to continue our review of the Company and are prepared to move expeditiously to consummate the Proposed Transaction along the lines discussed above. If you have any questions about this letter, feel free to contact Michael Klein or me at (203) 552-3500. If this letter correctly sets forth, in general, the terms and conditions of the Proposed Transaction, kindly have Safeguard sign this letter in the space provided below. We look forward to hearing back from you.

Very truly yours,

LITTLEJOHN & CO., LLC

By: _____

Name: David E. Simon

Title:   Managing Director

ACCEPTED AND AGREED
as of June _16_, 2009:

SAFEGUARD PROPERTIES, INC.

By: _____

Name:

Title:

Cc:        Gregory P. Meredith, Proctor NBF
           Diane Warshay, Proctor NBF

5

# EXHIBIT B

LITTLEJOHN & CO., LLC
8 SOUND SHORE DRIVE
GREENWICH, CONNECTICUT 06830

July 31, 2009

Mr. Kendrick Ashton
Perella Weinberg Partners LP
767 Fifth Avenue
New York, NY 10153
*Via electronic mail: kashton@pwpartners.com*

**Re:     Reconfirmation of Proposal for the Acquisition of Safeguard Properties, Inc.**

Dear Mr. Ashton:

Based on our due diligence to date and pursuant to Paragraph 6 of the letter agreement dated June 15, 2009 (the "Letter") between Safeguard Properties, Inc. ("Safeguard" or the "Company") and Littlejohn & Co., LLC ("Littlejohn"), we are pleased to reconfirm our interest in acquiring the Company (the "Proposed Transaction") at a debt- and cash-free enterprise value of $260 million and in accordance with, and subject to, the terms and conditions, described in the Letter. We appreciate the responsiveness of Management and your team to our review thus far. We are currently working in good faith to pursue the Proposed Transaction.

We trust that this letter has automatically extended the Exclusivity Period as set forth in Paragraph 6 of the Letter. If you have any questions about this letter, feel free to contact Michael Klein or me at (203) 552-3500.

Very truly yours,

LITTLEJOHN & CO., LLC

By:     _____
Name: David F. Simon
Title:   Managing Director

CC: Greg Meredith, Proctor NBF Capital

#1832985 v3 \017633 \0012

# EXHIBIT C

**Littlejohn & Co., LLC**
**8 Sound Shore Drive**
**Greenwich, Connecticut 06830**
------
Tel: 203-552-3500  Fax: 203-552-3550

August 14, 2009

**Via Electronic Mail:**
Mr. Kendrick Ashton
Perella Weinberg Partners LP
767 Fifth Avenue
New York, NY 10153

Re:     Reconfirmation of Proposal for the acquisition of
         Safeguard Properties, LLC

Dear Mr. Ashton:

        Based on our due diligence to date and pursuant to Paragraph 6 of the letter agreement dated June 15, 2009 (the "Letter") between Safeguard Properties, Inc., now known as Safeguard Properties, LLC (the "Company"), and Littlejohn & Co., LLC ("Littlejohn"), we are pleased to reconfirm our interest in acquiring the Company (the "Proposed Transaction") at a debt- and cash-free enterprise value of $260 million and in accordance with, and subject to, the terms and conditions described in the Letter. We appreciate the continued responsiveness of Management and your team to our review thus far. We are currently working in good faith to pursue the Proposed Transaction.

        We ask that the Exclusivity provisions of the Letter be extended until September 3, 2009. We understand that the Extension Period will expire on September 3, 2009, unless you agree, in your sole discretion, to extend it beyond that date. By executing below, you agree to such extension until September 3, 2009 and confirm that you have complied with the provisions of Section 6 of the Letter through the date hereof.

        If you have any questions about his letter, feel free to contact Michael Klein or me at (203) 552-3500.

                          Very truly yours,

                          LITTLEJOHN & CO., LLC

                          By: _____
                          Name: David E. Simon
                          Title: Managing Director

ACCEPTED, AGREED AND CONFIRMED as of August 24, 2009:

SAFEGUARD PROPERTIES, LLC

By: _____
Name: _____
Title: _____

cc:     Greg Meredith, Proctor NBF Capital

71125386.1

# EXHIBIT D

**Littlejohn & Co., LLC**
**8 Sound Shore Drive**
**Greenwich, Connecticut 06830**
------
Tel: 203-552-3500  Fax: 203-552-3550

September 3, 2009

<u>**Via Electronic Mail:**</u>
Mr. Kendrick Ashton
Perella Weinberg Partners LP
767 Fifth Avenue
New York, NY 10153

Re:    Reconfirmation of Proposal for the acquisition of
       Safeguard Properties, LLC

Dear Mr. Ashton:

Based on our due diligence to date and pursuant to Paragraph 6 of the letter agreement dated June 15, 2009 (the "Letter") between Safeguard Properties, Inc., now known as Safeguard Properties, LLC (the "Company"), and Littlejohn & Co., LLC ("Littlejohn"), we are pleased to reconfirm our interest in acquiring the Company (the "Proposed Transaction") at a debt- and cash-free enterprise value of $260 million and in accordance with, and subject to, the terms and conditions described in the Letter. We appreciate the continued responsiveness of Management and your team to our review thus far. We are currently working in good faith to pursue the Proposed Transaction.

We ask that the Exclusivity provisions of the Letter be extended until September 18, 2009. We understand that the Extension Period will expire on September 18, 2009, unless you agree, in your sole discretion, to extend it beyond that date. By executing below, you agree to such extension until September 18, 2009 and confirm that you have complied with the provisions of Section 6 of the Letter through the date hereof.

If you have any questions about his letter, feel free to contact Michael Klein or me at (203) 552-3500.

Very truly yours,

LITTLEJOHN & CO., LLC

By: _____
Name: David E. Simon
Title:    Managing Director

ACCEPTED, AGREED AND CONFIRMED as of September _3_, 2009:

SAFEGUARD PROPERTIES, LLC

By: _____
Name: _AlAN JAFFA_____
Title:    _COO_____

cc:    Greg Meredith, Proctor NBF Capital

71125386.1

# EXHIBIT E

**Littlejohn & Co., LLC**
**8 Sound Shore Drive**
**Greenwich, Connecticut 06830**
------
Tel: 203-552-3500  Fax: 203-552-3550

September 18, 2009

<u>Via Electronic Mail:</u>
Mr. Kendrick Ashton
Perella Weinberg Partners LP
767 Fifth Avenue
New York, NY 10153

Re:    Reconfirmation of Proposal for the acquisition of
       Safeguard Properties, LLC

Dear Mr. Ashton:

Based on our due diligence to date and pursuant to Paragraph 6 of the letter agreement dated June 15, 2009 (the "Letter") between Safeguard Properties, Inc., now known as Safeguard Properties, LLC (the "Company"), and Littlejohn & Co., LLC ("Littlejohn"), we are pleased to reconfirm our interest in acquiring the Company (the "Proposed Transaction") at a debt- and cash-free enterprise value of $260 million and in accordance with, and subject to, the terms and conditions described in the Letter. We appreciate the continued responsiveness of Management and your team to our review thus far. We are currently working in good faith to pursue the Proposed Transaction.

We ask that the Exclusivity provisions of the Letter be extended until October 2, 2009. We understand that the Extension Period will expire on October 2, 2009, unless you agree, in your sole discretion, to extend it beyond that date. By executing below, you agree to such extension until October 2, 2009 and confirm that you have complied with the provisions of Section 6 of the Letter through the date hereof.

If you have any questions about his letter, feel free to contact Michael Klein or me at (203) 552-3500.

Very truly yours,

LITTLEJOHN & CO., LLC

By: _____
Name: David E. Simon
Title:   Managing Director

ACCEPTED, AGREED AND CONFIRMED as of September 18, 2009:

SAFEGUARD PROPERTIES, LLC

By: _____
Name: _____
Title: _____

cc:   Greg Meredith, Proctor NBF Capital

71125386.1